## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LINA POSADA, *et al.*,

     Plaintiffs,

v.                                   Case No: 8:22-cv-1578-CEH-AAS

ASPEN SPECIALTY INSURANCE
COMPANY, FIRST SPECIALTY
INSURANCE CORPORATION and
PRINCETON EXCESS AND
SURPLUS LINES INSURANCE
COMPANY,

     Defendants.

_____

## <u>ORDER</u>

This cause comes before the Court on Plaintiff Lina Posada *et al.*'s Motion to Remand to State Court (Doc. 37) and Defendant Aspen Specialty Insurance Company's ("Aspen") Response in Opposition (Doc. 48).  Also before the Court are Aspen's Motion to Dismiss (Doc. 24), Defendant Princeton Excess and Surplus Lines Insurance Company's (PESLIC) Motion to Dismiss (Doc. 27), Defendant First Specialty Insurance Corporation's, now known as Swiss Re ("Swiss Re"), Motion for Judgment on the Pleadings (Doc. 50), and Plaintiffs' Responses in Opposition (Docs. 31, 35, 51).  The parties have also filed a reply and sur-reply to PESLIC's motion (Docs. 45, 49).

Upon full review and consideration, the Court will DENY Plaintiffs' Motion for Remand.  It will also DENY Aspen's Motion to Dismiss, PESLIC's Motion to Dismiss, and Swiss Re's Motion for Judgment on the Pleadings.

## I.   BACKGROUND

Plaintiffs, who are professional models, allege that a Bradenton strip club called DaVinci's used photographs of them in its advertising without their consent.  Each Plaintiff's likeness was used at least once by DaVinci's social media accounts to promote various events between 2015 and 2018. *See* Doc. 1-3 ¶¶ 25-40.  Plaintiffs allege that the use of their images gave the false impression that they were employed by or endorsed DaVinci's. *Id.*

In 2019, Plaintiffs sued DaVinci's in the Twelfth Judicial Circuit Court in and for Manatee County, Florida ("the underlying action"). *Id.* ¶ 45.  Each Plaintiff alleged five identical claims: unauthorized publication of their image in violation of Fla. Stat. § 540.08, common law invasion of privacy/misappropriation, conversion, unjust enrichment, and defamation. *See* Doc. 1-3(A).[1]

Between 2015 and 2018, DaVinci's maintained general liability insurance policies with Aspen, PESLIC, and Swiss Re. Doc. 1-3 ¶¶ 41-44.  Plaintiffs allege that the Aspen policy was in effect from July 1, 2015 to July 1, 2016, and the PESLIC policy was in effect from September 13, 2016 to June 29, 2018. *Id.*  The parties agree that the Swiss Re policy was in effect from July 1, 2016 to at least September 13, 2016,

---

[1] Doc. 1-3(A) refers to the complaint in the underlying action, which is included within Doc. 1-3 under the title "Exhibit A."

but disagree as to whether it remained active after that date. *Id.*; *see* Doc. 50.  All three insurers refused to undertake DaVinci's defense in the underlying action. Doc. 1-3 ¶¶ 46-52.

DaVinci's and Plaintiffs entered into a *Coblentz* agreement,[2] which was ratified by the Twelfth Judicial Circuit Court on April 22, 2022 as a Final Consent Judgment. *Id.* ¶ 55.  The Final Consent Judgment awarded a total of $827,500 in damages, split between the Plaintiffs in amounts ranging from $10,000 to $200,000. *Id.*  Pursuant to the *Coblentz* agreement, DaVinci's assigned all rights to recover under the three insurers' policies to Plaintiffs. *Id.* ¶ 54.

Plaintiffs then filed an action in the Twelfth Judicial Circuit Court against Aspen, PESLIC, and Swiss Re. *See* Doc. 1-3.  They allege that the insurers breached their insurance contracts by refusing to defend and indemnify DaVinci's, and request a declaratory judgment to that effect. *Id.*  Plaintiffs seek to enforce DaVinci's insurance policies to recover the damages awarded to them in the Final Consent Judgment. *Id.* ¶ 67.  Defendants timely removed the action to this Court, contending that subject matter jurisdiction exists based on diversity of citizenship. Doc. 1.

Four motions pend before this Court.  The Court must first resolve Plaintiffs' Motion for Remand (Doc. 37), in order to determine whether it may exercise

---

[2] *Coblentz* agreements permit an insured party to "enter into a reasonable settlement agreement with the [injured party] and consent to an adverse judgment for the policy limits that is collectable only against the insurer." *Garcia v. GEICO Gen. Ins. Co.*, 807 F.3d 1228, 1230 n.1 (11th Cir. 2015), quoting *Perera v. U.S. Fid. & Guar. Co.*, 35 So.3d 893, 900 (Fla.2010).

jurisdiction over this action. *See Univ. of South Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410-11 (11th Cir. 1999) ("[W]hen an action is removed from state court, the district court must first determine whether it has original jurisdiction over the plaintiff's claims. [ ] If there is jurisdiction, then removal is appropriate and the court may proceed to the merits of the case.").  Next, the Court will turn to the Defendants' motions.  Aspen moves for dismissal without prejudice because it asserts that the complaint is a shotgun pleading (Doc. 24).  PESLIC and Swiss Re both seek relief on the merits; PESLIC in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 27), and Swiss Re in a motion for judgment on the pleadings pursuant to Rule 12(c) (Doc. 50).

## II.    MOTION FOR REMAND

### A. Legal Standard

"The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties." *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1000 (11th Cir. 1982).  The bases for federal courts' subject matter jurisdiction are limited, as federal courts are "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

Congress granted district courts original subject matter jurisdiction over civil actions sitting in diversity. 28 U.S.C. § 1332.  Diversity jurisdiction exists where the

lawsuit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. *Id.* § 1332(a)(1). It is the burden of the party seeking federal jurisdiction to establish that diversity exists by a preponderance of the evidence. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

A defendant may remove a civil action from state court to the district court of the United States for the district and division within which the action pends, as long as the district court has subject matter jurisdiction. 28 U.S.C. § 1441(a). However, since removal "raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.*

## B. Discussion

Plaintiffs argue that the Court lacks subject matter jurisdiction because the amount in controversy does not exceed the jurisdictional threshold.[3] Doc. 37. Specifically, they contend that the Defendants have not met their burden to prove that each Plaintiff's claim against each Defendant exceeds $75,000. *Id.* Acknowledging that two Plaintiffs, Geiger and Toth, received judgments in excess of $75,000, Plaintiffs argue that each of their judgments must be split equally among the three Defendants, because "[a]ll of Davinci's publication dates of [their] images fall within all of the three Defendants' policies[.]" *Id.* at 5-9. Thus, no single claim would exceed $75,000. *Id.* at

---

[3] Plaintiffs do not challenge the existence of complete diversity. *See* Doc. 37 at 2.

9.  Plaintiffs also assert that their claims cannot be aggregated because the case does not involve "a unified, indivisible, interest in a common fund." *Id.* at 11.  Finally, Plaintiffs request attorneys' fees and costs incurred in connection with the removal and remand. *Id.* at 13.

In opposition, Defendants assert that the amount in controversy requirement is satisfied if a single Plaintiff's claim against a Defendant exceeds $75,000. Doc. 48 at 6.  Defendants point out that Plaintiffs Geiger and Toth have claims totaling $80,000 and $200,000, respectively, and that each claim satisfies the amount in controversy requirement. *Id.* at 7. In response to Plaintiffs' argument that Geiger's and Toth's damages should be split between them, Defendants counter that "[t]he complaint omits even the suggestion of a division of damages—much less an even split." *Id.* Defendants further dispute Plaintiffs' method of dividing Geiger's and Toth's damages and propose that, if the damages are split, the allocation should align with each Defendant's policy period. *Id.* at 10.  Doing so would place Toth's claims against Aspen above the jurisdictional threshold. *Id.*  Alternatively, Defendants argue that the amount in controversy "is even more readily satisfied" by aggregating Plaintiffs' total damages of $827,500. *Id.* at 11-14.  They assert that Plaintiffs' claims are not divisible because they "are derived from rights that the Plaintiffs hold in group status as a result of the assignment of rights to Davinci's and the consent judgment in the amount of $827,500." *Id.* at 13. Finally, Defendants ask for denial of Plaintiffs' request for attorneys' fees because they had an objectively reasonable basis for seeking removal. *Id.* at 15.

Courts measure the amount in controversy at the time of removal. *Pretka v. Kolter City Plaza II*, 608 F.3d 744, 751 (11th Cir. 2010).  Under 28 U.S.C. § 1446(c)(2), "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy" for purposes of removal.  "Where damages are unspecified" in the state court pleadings, the removing defendant must prove, by a preponderance of the evidence, that the amount in controversy more likely than not exceeds the $75,000 threshold. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007); *Roe v. Michelin N. Am., Inc.* 613 F.3d 1058, 1061 (11th Cir. 2010).  While the Court may not speculate or guess as to the amount in controversy, "when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations," such "reasoning is not akin to [impermissible] conjecture, speculation, or star gazing." *Pretka*, 608 F.3d at 752-54.

In a civil action with multiple plaintiffs, one plaintiff's claim over $75,000 is sufficient to satisfy the amount in controversy requirement for diversity jurisdiction, even if other plaintiffs' claims fall below the threshold. *Exxon Mobil v. Allapattah Svcs., Inc.*, 545 U.S. 546, 547-548 (2005).  In *Exxon*, only some of the multiple plaintiffs' claims were over $75,000. *Id*. at 549.  The Court reasoned that "when the well-pleaded complaint contains at least one claim that satisfies the amount-in-controversy requirement, and there are no other relevant jurisdictional defects, the district court, beyond all question, has original jurisdiction over that claim." *Id.* at 559.  The district

court may then assert jurisdiction over the remaining claims through supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). *Id.* at 559-560; *see also Myers v. Porter*, 3:10-cv-809-HWM-TEM, 2010 WL 11623500, *2 n.2 (M.D. Fla. Nov. 4, 2010) (finding that one plaintiff's claim satisfied the jurisdictional threshold and exercising supplemental jurisdiction over the others plaintiff's claims).

Here, two of the 16 Plaintiffs have claims that exceed $75,000. Geiger received a judgment of $80,000, and Toth received a judgment of $200,000 (Doc 1-3 at 290-291). The Plaintiffs erroneously assert that the Defendants have the burden to prove that "the amount in controversy of each Plaintiff against each Defendant exceeds $75,000." Doc 37 at 5. Pursuant to *Exxon*, however, Defendants must prove only that at least one Plaintiff has a claim of more than $75,000 for the Court to exercise jurisdiction over the claims of all Plaintiffs. Toth's and Geiger's claims each satisfy the jurisdictional requirement.

Plaintiffs next argue that neither Toth's nor Geiger's claim adequately establishes the amount in controversy, because it must be split between the three Defendants. Doc. 37 at 6-9. Plaintiffs are correct that it is unlikely each Defendant will be liable for the entire judgment. *See, e.g.*, *Spencer v. Assurance Co. of Am.*, 39 F.3d 1146, 1149 (11th Cir. 1994) (an insurer is not liable for uncovered claims even if its failure to defend the claims was unjustified). However, it is the burden of a plaintiff seeking to enforce a consent judgment to establish the allocation of damages between covered and uncovered claims. *See, e.g.*, *Trovillion Constr. and Dev., Inc. v. Mid-Continent Cas. Co.*, 6:12-cv-914-RBD-TBS, WL 201678 (M.D. Fla. Jan. 17, 2014); *Jacobs v. Mid-*

*Continent Casualty Co.*, 19-61017-CIV-ALTMAN, 2021 WL 4077956 (S.D. Fla. Sept. 8, 2021); *Bradfield v. Mid-Continent Casualty Co.*, 143 F. Supp. 3d 1215 (M.D. Fla. 2015). Neither the Complaint nor the Final Consent Judgment provides an allocation of each Defendant's liability.   The Complaint asserts only that all three Defendants, collectively, breached their contractual obligations, were obligated to defend and/or indemnify their insured, and are now bound by the Final Consent Judgment. *See* Doc. 1-3 ¶¶ 56-69.   The Final Consent Judgment includes separate judgments for each Plaintiff, two of which exceed $75,000, but does not allocate them between Defendants.   From the face of the pleadings, then, it appears that the sum demanded by two of the Plaintiffs exceeds the jurisdictional threshold. *See Lowery*, 483 F.3d at 1208 (defendant bears the burden of establishing the jurisdictional amount only "where damages are unspecified"); *see also Tall v. Fed. Ins. Co.*, 6:20cv1125-RBD-LRH, 2020 WL 6484106 (M.D. Fla. Aug. 27, 2020) (finding amount in controversy satisfied by total damages where plaintiff failed to explain how they should be allocated between three claims and defendants), *report and recommendation adopted*, 2020 WL 5887647 (Oct. 5, 2020).

To the extent Defendants are required to prove that their individual liability to an individual Plaintiff exceeds the threshold, despite the collective allegations in the Complaint, the Court finds that they have met their burden.   The Court first notes that a determination of each Defendant's liability to each Plaintiff is premature at the jurisdictional stage, because it necessarily requires consideration of the merits of the litigation. *See Univ. of South Ala.*, 168 F.3d 410-411 (district court must resolve the

jurisdictional question before proceeding to the merits).  Further, "the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka*, 608 F.3d 744, 751 (quotation omitted) (emphasis in original).  Thus, the Court must consider only whether, if liability were apportioned between the Defendants, at least one Plaintiff's claim against one Defendant would likely exceed $75,000.

In their Motion to Remand, Plaintiffs propose dividing Toth's and Geiger's claim evenly among the three Defendants, because they allege that the publication dates of their images fell within all three Defendants' policies. Doc. 37 at 7.  But Plaintiffs offer no legal or factual support for their assumption that a split should be equal.  On the contrary, Defendants point out that the first publication date of each distinct image does not fall evenly between the periods in which each policy was in effect. Doc. 48 at 10.  Instead, they propose that each Plaintiff's judgment be divided by the number of distinct images that were published, with each image attributed to the Defendant whose policy was in effect on its date of first publication—information that is available from the allegations in the Complaint. *Id.*; *see* Doc. 1-3 ¶¶ 25-44.  Using this calculation, Toth's claim against Aspen alone would exceed the jurisdictional threshold. Doc. 48 at 11.

Defendant's proposed allocation method provides a reasonable and valid basis for concluding that the amount in controversy for Toth's claim against Aspen more likely than not exceeds the jurisdictional threshold. *See Pretka*, 608 F.3d at 752-754; *cf.*

*Jacobs*, 2021 WL 4077956 at *4 (granting summary judgment to defendants where record lacked evidence from which a reasonable jury could apportion damages between two defendants).   Again, the Court does not render a determination as to whether Aspen is liable to Toth for that amount or whether Aspen's policy even covered her claims.   Rather, it determines only that Defendants have adequately demonstrated that the amount in controversy of at least one Plaintiff's claims against one Defendant likely exceeds $75,000 for jurisdictional purposes.

Because the Court concludes that Defendants have satisfied their burden of proving by a preponderance of the evidence that the amount in controversy is satisfied under two different theories, it need not address Defendants' third theory that all Plaintiffs' claims may be aggregated. *See* Doc. 48 at 11-15.[4]   Diversity jurisdiction exists.   Therefore, the Motion for Remand is due to be denied.

## III.   ASPEN'S MOTION TO DISMISS

In Aspen's Motion to Dismiss, it argues that the Complaint must be dismissed because it constitutes an impermissible shotgun pleading. Doc. 24 at 3-7.   Complaints that violate either Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).   "The unifying characteristic of all types of

---

[4] As Plaintiffs argue (Doc. 37 at 11-12), aggregation of plaintiffs' claims for the purpose of establishing the amount in controversy is only appropriate in the "uncommon" scenario in which the defendant owes an obligation to a group of plaintiffs as a whole and not to the individuals severally. *Morrison v. Allstate Indemn. Co.*, 228 F.3d 1255, 1263 (11th Cir. 2000). Here, on the other hand, the Final Consent Judgment Plaintiffs seek to enforce is already divided between the Plaintiffs.

shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'").

The Eleventh Circuit has identified four general types of shotgun pleadings:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) "a complaint … replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Burke v. Custom Marine Grp.*, 847 F. App'x 578, 580–81 (11th Cir. 2021), citing *Weiland*, 792 F.3d at 1321-23.

Aspen alleges that the Complaint constitutes the fourth type of shotgun pleading, because it "lumps all of the defendants together as if they are one," even though they are separate legal entities with different legal relationships to each Plaintiff. Doc. 24 at 4. Both counts are pleaded against all three Defendants, and Plaintiffs incorporate all of the factual allegations into them—even though some allegations are only relevant to some of the Defendants. *Id.* at 5. Aspen contends that

this pleading style prevents it from determining the allegations asserted against it; for example, it creates the impression that Plaintiffs seek to hold Aspen liable under the other Defendants' policies. *Id.* at 5-6.

In response, Plaintiffs argue that lodging the same claim against multiple defendants is permissible if they are all alleged to have participated in the same acts giving rise to the claim, provided the complaint gives adequate notice to each one. Doc. 31 at 4-5. Plaintiffs point out that their factual allegations explain the dates of each publication as well as each Defendant's period of policy coverage, which makes each Defendant's liability clear. *Id.* at 6-7. In any event, Plaintiffs contend that the duty to defend arises whenever some facts are alleged that fall within the policy coverage, rendering it immaterial which Plaintiffs' claims fall under which of the Defendants' policy dates. *Id.* at 7-8.

The fourth type of shotgun pleading asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Weiland*, 792 F.3d at 1323. This type of shotgun pleading makes it "virtually impossible" to determine which factual allegations the plaintiff intends to use against each defendant. *Worldspan Marine Inc. v. Comerica Bank*, No. 20-11646, 2021 WL 5882006, *2 (11th Cir. Dec. 13, 2021); *see also Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 663-64 (11th Cir. 2019) (upholding district court order that found "it is completely unclear which of the factual allegations set forth in the forty-page complaint pertain to which of Plaintiff's claims or to which Defendant," requiring defendants to "sort[] through

13

each factual allegation in the [Complaint] in a futile attempt to discern what allegations are alleged against them.").

Importantly, a complaint is not a shotgun pleading merely because it asserts a claim against multiple defendants. "The fact that defendants are accused collectively does not render the complaint deficient." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). The problem arises only when doing so fails to provide defendants with adequate notice of the claims against them. *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1139–40 (M.D. Fla. 2018), citing *Weiland*, 792 F.3d at 1323. Therefore, a complaint that alleges the acts or omissions attributed to each defendant does not violate the pleading rules. *Id.* (declining to dismiss complaint that alleged the existence and purpose of a scheme between multiple defendants along with the individual actions each defendant perpetrated). In *Shallenburg v. PNC Bank, N.A.*, No. 8:18-CV-2225-CEH-TGW, 2020 WL 555447, *6 (M.D. Fla. Feb. 4, 2020) (Honeywell, J.), for example, this Court found that the complaint provided the defendants with sufficient notice even though the count alleging a violation of the Florida Consumer Collection Practices Act was brought collectively against all defendants, because the complaint's factual allegations sufficiently described the activities undertaken by each of them. *See also State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1257 (M.D. Fla. 2021) (Covington, J.) (complaint contained sufficient allegations as to each defendant to place them on notice of the allegations against them); *FFC Mortg. Corp. v. Red Door Title Ins. Agency, Inc.*, No. 13-61132-civ-SCOLA, 2013 WL 12138556, *3 (S.D. Fla. Dec. 12, 2013) ("The Court therefore finds that FFC has not simply lumped the

Defendants together but has provided the specific acts attributable to [each Defendant] to give sufficient notice of the allegations of fraud against them.").

Moreover, "nothing in the pleading rules prohibits lodging the same claim against multiple Defendants if they are all alleged to have participated in the same acts rising to the claim." *Whitehurst v. G & A Rest. Mgmt., Inc.*, No. 2:20-CV-67- MRM, 2020 WL 2062462, *2 (M.D. Fla. Apr. 29, 2020) (rejecting defendant's shotgun pleading argument where it was possible each defendant could have engaged in all the acts plaintiff alleged to have violated the Fair Labor Standards Act); *cf. Durham v. Seacrest Country Day Sch.*, No. 2:22-CV-732-SPC-KCD, 2023 WL 1796426, *3 (M.D. Fla. Feb. 7, 2023) (dismissing complaint as a shotgun pleading because it failed to specify which defendant the claims were brought against, where it was not likely that all claims could have been brought against all defendants).

Here, the inclusion of all three Defendants within each count does not render the Complaint a shotgun pleading, because the factual allegations provide adequate notice of the conduct Plaintiffs allege against them. The Complaint contains only two counts, each of which applies to all three Defendants in exactly the same manner. *See Whitehurst*, 2020 WL 2062462 at *2. As Plaintiffs note, the Complaint clearly states the publication dates of each Plaintiff's image, as well as the dates in which each Defendant's insurance policy was in effect, allowing each Defendant to investigate its own duties with respect to the Plaintiffs' claims against the insured. Just as in *Shallenburg*, 2020 WL 555447 at *6, the fact that the factual allegations specific to each Defendant were not repeated or delineated within the count itself does not render

Plaintiffs' claims unclear.   As to Aspen's argument regarding the Complaint's incorporation of all factual allegations into each count, Doc. 24 at 5, the Court notes that plaintiffs are not required to "more precisely parcel out and identify the facts relevant to each" claim or defendant, as long as the factual allegations are easily understandable. *See Weiland*, 792 F.3d at 1324 (complaint was not a shotgun pleading where it incorporated all factual allegations into every count, as long as it did not incorporate the allegations of each count into successive counts); *Burke*, 847 F. App'x at 581 (same).   Finally, the Court observes that the other two Defendants have responded substantively to the claims, belying an argument that they could not determine which allegations are asserted against them. *See* Docs. 27, 33, 50; *cf.* Doc. 24 at 5.   This Complaint is not a shotgun pleading.   Aspen's Motion to Dismiss (Doc. 24) is therefore due to be denied.

## IV.   PESLIC'S MOTION TO DISMISS AND SWISS RE'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants PESLIC and Swiss Re each request judgment on the merits, because they assert that there was no coverage for the underlying litigation under their respective policies.   PESLIC seeks dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6) (Doc. 27), while Swiss Re moves for judgment on the pleadings pursuant to Rule 12(c) (Doc. 50).

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are also insufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted).  The Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*  Overall, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

When resolving a motion for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P., the Court must consider all of the pleadings: the complaint, the answer, and any documents attached as exhibits. *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014).  "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010) (internal quotation marks omitted).  "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News*

*Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018).  Accordingly, "[i]n determining whether a party is entitled to judgment on the pleadings, [a court must] accept as true all material facts alleged in the non-moving party's pleading and…view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo*, 774 F.3d 1329, 1335 (11th Cir. 2014); *Cunningham*, 592 F.3d at 1255.  "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Perez*, 774 F.3d at 1335.

To recover under a *Coblentz* agreement, a plaintiff must prove that: (1) the defendant insurance company wrongfully refused to defend the insured in the underlying litigation; (2) the defendant had a duty under the insurance policy to indemnify the insured; and (3) the settlement between the plaintiff and insured was reasonable and made in good faith. *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1322 (11th Cir. 2014).  An insurance suit will be dismissed for failure to state a claim when review of the insurance policy and the underlying claim for which coverage is sought "unambiguously reveals that the underlying claim is not covered." *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 143 F.Supp.3d 1283, 1291 (S.D. Fla. 2015) (collecting cases).

Under Florida law,[5] insurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage.

---

[5] In a contract action, a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *See Zodiac Grp., Inc. v. Axis Surplus Ins. Co.*, 542 F. App'x 844, 848 (11th Cir. 2013).

*U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007).  "If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." *Travelers Indemn. Co. v. PCR Inc.*, 889 So.2d 779, 785 (Fla. 2004).  Policy language that is "susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage," will be considered ambiguous; but a provision or term will not be found ambiguous "merely because it is complex and requires analysis" or lacks a definition. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165-166 (Fla. 2003).  An insured bears the burden of proving that a claim against it is covered by the insurance policy, while the insurer bears the burden of proving that an exclusion to coverage applies. *Goldberg*, 143 F.Supp.3d at 1293.

**B. Discussion**

PESLIC and Swiss Re assert that Plaintiffs' claims are not covered by their respective policies for a variety of reasons, including that they fall outside of each policy's time period and that they are precluded by one or more policy exclusions. Each reason will be discussed in turn.

*1) Individual Plaintiffs' Claims Fall Outside Policy Periods*

Both PESLIC and Swiss Re argue that most of the Plaintiffs' claims against them must be dismissed because their injury dates fall outside of the respective policy period.  Each of their policies states that liability coverage applies "only if the offense was committed…during the policy period." Doc. 27-1 at 46; Doc. 33-1 at 33.  PESLIC

19

points out that only nine of the 16 Plaintiffs allege that their images were published during the PESLIC policy period, which ran from September 13, 2016 to September 13, 2017. Doc. 27 at 5, 15. Only three Plaintiffs allege publication dates that fall solely within the PESLIC policy period. *Id.* at 16. Although PESLIC does not affirmatively argue for dismissal of the other Plaintiffs' claims, it asserts in a subheading that "there is no coverage available for any of the Plaintiffs' claims" that are based on publication dates outside the publication period. *Id.* at 14. Likewise, Swiss Re argues that only a single Plaintiff's claims fall within its policy period, which it asserts covered DaVinci's only from July 31, 2016 to September 12, 2016, after which DaVinci's was removed from the policy. Doc. 50 at 14-16, citing Doc. 33-3. As a result, Swiss Re argues, judgment must be entered in its favor with respect to all Plaintiffs except the one whose claim is covered. *Id.*

Plaintiffs do not substantively respond to PESLIC's assertion that Plaintiffs' claims outside the policy period are not covered. *See* Doc. 35. In response to Swiss Re, Plaintiffs argue that all Plaintiffs' claims are covered because their images were being used continuously during the policy period. Doc. 51 at 7-9. Moreover, they contend there is insufficient evidence that DaVinci's received the legally required notice that it had been removed from the Swiss Re policy, creating a genuine issue of material fact regarding the dates of policy coverage. *Id.* at 7-8.

Defendants are not entitled to dismissal or judgment on the pleadings because some of the Plaintiffs' underlying claims fall outside the policy term. It is well-settled that an insurer is obligated to defend an entire suit where the underlying complaint

"alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not[.]" *Lime Tree Vill, Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (citations omitted); *see also*, *e.g.*, *Tire Kingdom, Inc. v. First Southern Ins. Co.*, 573 So.2d 885, 887 (Fla. 3d DCA 1990) ("[I]t is a clear rule of law that where some allegations set out in a complaint require the insurer to defend the insured, and some allegations do not, the insurer must provide a defense on the entire suit.").  Insurers must defend a suit "even where the complaint alleges facts partially within and partially outside the scope of coverage[.]" *Public Risk Management of Fla. v. One Beacon Ins. Co.*, 569 Fed. App'x 865, 870 (11th Cir. 2014), quoting *Trizec Props., Inc. v. Biltmore Constr. Co., Inc.*, 767 F.2d 810, 811 (11th Cir. 1985).

Neither PESLIC nor Swiss Re provides support for the contention that they had only a partial duty to defend DaVinci's, or that they are entitled to dismissal of claims within a *Coblentz* action because only some of the underlying claims triggered policy coverage.  Swiss Re's reliance on cases where none of the relevant injuries in the underlying litigation fell within the policy period is misplaced, as the duty to defend is not activated at all in such a scenario. *See* Doc. 50 at 15, citing *Scottsdale Ins. Co. v. Outrigger Beach Club Condo. Ass'n., Inc.*, 304 F.Supp.3d 1208 (M.D. Fla. 2018); *North River Ins. Co. v. Broward Cnty. Sheriff's Office*, 428 F.Supp.2d 1284 (S.D. Fla. 2006). Here, on the other hand, each Defendant's duty to defend DaVinci's in the underlying lawsuit was triggered by the existence of at least some Plaintiffs' claims that fell within each policy term, unless they were excluded by a different policy provision. *Cf.* Doc.

45 at 1 (asserting that only some Plaintiffs' allegations trigger coverage). This basis for dismissal or judgment on the pleadings is due to be denied.

### 2) *Prior Publication Exclusion*

PESLIC also makes a separate argument related to the timing of the publications of the Plaintiffs' images. It asserts that the "Material Published Prior to Policy Period" exclusion bars all Plaintiffs' claims. This exclusion reads:

> **2(c) Material Published Prior to Policy Period**
> 'Personal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

Doc. 27-1 at 46. PESLIC argues that the earliest publication date of the "material" at issue in the underlying litigation is December 14, 2015, which is the earliest date that any Plaintiffs allege publication of their likeness; this date is well before the PESLIC policy began. Doc. 27 at 16. In the alternative, PESLIC contends, even the "narrowest" application of the exclusion bars coverage of the claims of the ten Plaintiffs who are alleged to have been injured by a publication before the inception of the PESLIC policy. *Id.* at 17.

In response, Plaintiffs dispute PESLIC's interpretation of the term "material," pointing out that this action involves the publication of many different images, used at different times to promote separate events. Doc. 35 at 14-16. Plaintiffs rely on a Seventh Circuit case in which the court interpreted the term "material" within the same policy exclusion to mean the same publication in the same means and form. *Id.*, citing *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004).

PESLIC's interpretation of the Prior Publication Exclusion is far outside of its words' "everyday meaning as [they are] understandable to the layperson." *Goldberg*, 143 F.Supp.3d at 1292. Plaintiffs each allege that they were injured by the publication of different images on different dates. Doc. 1-3 ¶¶ 25-40. The plainest reading of the policy provision is that it refers to the first publication date of each separate image; in other words, the provision excludes coverage for any offending *image* that was first published outside of the policy period. PESLIC's argument that all images—or just all images of a single Plaintiff—should be lumped together is not the most reasonable reading of the exclusion. Moreover, the cases PESLIC cites in which courts found that a prior publication exclusion barred coverage (Doc. 45 at 3-4) involved either claims that alleged infringement of the exact same item, *State Nat. Ins. Co. v. Highland Holdings, Inc.*, 8:14-CV-00524-EAK-EAJ, 2015 WL 3466215, (M.D. Fla. June 1, 2015) (publication of the same infringing architectural designs); *Battery Web, Inc. v. Maryland Cas. Co.*, 05-61138-CIV, 2006 WL 8431024 (S.D. Fla. Jan. 26, 2006) (the use of a single infringing domain name), or prior publication of *all* images before the policy period began, *see Aix Specialty Ins. Co. v. Night Indus., Inc.*, 6:20-CV-225-PGB-EJK, 2020 WL 8187752 (M.D. Fla. Dec. 9, 2020).

Because PESLIC "has not demonstrated that its broad reading of the exclusion is the only reasonable one and because exclusions must be strictly construed against the insurer, this exclusion does not prevent coverage." *See Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1310 (11th Cir. 2008). PESLIC does not dispute that the first publication date of some of the offending images fell within its policy period. As noted

*supra*, the duty to defend is triggered by the existence of at least one claim that falls within a policy, even if not all claims do.  The Prior Publication Exclusion is not a basis for dismissal of this action.

### 3)  Knowing Exclusions

Next, PESLIC argues that dismissal is warranted because all Plaintiffs' underlying claims fall within two policy exclusions related to knowing conduct:

> **2(a) Knowing Violation of Rights of Another**
> 'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'
>
> **2(b) Material Published with Knowledge of Falsity**
> 'Personal and advertising injury' arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.'

Doc. 27-1 at 46.  PESLIC highlights many statements in the underlying complaint that allege intentional and knowing actions by DaVinci's. Doc. 27 at 17-19.

Plaintiffs respond by contending that their claims asserted liability under alternative theories, including recklessness and negligence. Doc. 35 at 12.  Plaintiffs also argue that the exclusions' use of the term "the insured" triggers the policy's severability clause and may open up the possibility of vicarious liability rather than knowledge. *Id.* at 12-13.

As described *supra*, an insurer must provide a defense on an entire suit as long as some allegations require it to defend the insured, even where some allegations do not. *Tire Kingdom*, 573 So.2d at 887.  Similarly, it must defend against an action whose

complaint alleges facts showing two or more grounds for or theories of liability, one that is within coverage and one that is not. *Lime Tree*, 980 F.2d at 1405 (quotation omitted); *see also Jones Boat Yard, Inc. v. St. Paul Fire & Marine Ins. Co.*, 745 Fed. App'x 308, 312-23 (11th Cir. 2018) ("In a long line of cases, we have stated that the duty to defend depends on the facts *and legal theories* alleged in the pleadings and claims against the insured…If the complaint's factual allegations could support liability under one of the legal theories alleged in the complaint, the duty is triggered.) (emphasis in original) (quotation omitted); *Medmarc Cas. Ins. Co. v. Yanowitch*, 1:20-CV-22822, 2022 WL 673546, *5 (S.D. Fla. Mar. 7, 2022) ("For an exclusionary clause to eliminate an insurer's duty to defend, the insurer must demonstrate that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation."), quoting *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006).

In *Lime Tree*, the Eleventh Circuit examined an underlying complaint similar to the one in the instant action. 980 F.2d 1402.  The insurance company pointed to "allegations made throughout the underlying complaints that Lime Tree committed a series of knowing and intentional acts," which were incorporated by reference into each count, and argued that the policy's exclusion for intentional acts applied. *Id.* at 1405.  But the Eleventh Circuit disagreed, observing that the factual allegations also set forth grounds for liability other than intentional acts. *Id.*  Therefore, the insurance company's "duty to defend arises because the factual allegations provide a potential basis for holding Lime Tree liable that is covered under the [policy]." *Id.* at 1406; *see*

also *Pub. Risk Mgmt. of Fla. v. One Beacon Ins. Co.*, 569 Fed. App'x 865, 870 (11th Cir. 2014) (allegations of multiple theories of breach of contract, including unintentional breach based on mistakes, misstatements, or omissions, fairly and potentially brought the suit within policy coverage despite the exclusion for losses arising from an intentional breach); *Hartford*, 466 F.3d at 1296-98 (intentional injury exclusion did not exclude coverage because of allegation of negligent conduct, despite allegations that the conduct arose from an intentional scheme to defraud); *Medmarc*, 2022 WL 673546 at *6 (where complaint contained allegations that "appear to fall outside of any purported conspiracy" in addition to allegations of a conspiracy, civil conspiracy exclusion did not apply); *SM Brickell Ltd. Partnership v. St. Paul Fire & Marine Ins. Co.*, 786 So.2d 1204, 1206 (Fla. 3d DCA 2001) (alternative allegation of negligent defamation brought claim outside of knowing falsity exclusion); *cf. Amica Mut. Ins. Co. v. Rsui Indemnity Co.*, 9:19-cv-80010, 2019 WL 1015203, *7 (S.D. Fla. March 4, 2019) (unequivocal statements in the underlying complaint alleged a specific intent to harm and knowledge of falsehood, with no other theories alleged), *report and recommendation adopted by* 2019 WL 7899723 (May 9, 2019).

Plaintiffs are therefore correct that allegations of alternative legal theories may bring the complaint outside of the two "knowing" exclusions and trigger the duty to

defend.  The Court will examine each count to determine whether the exclusions apply.[6]

   *a.  Count I: Unauthorized Publication of Image, Likeness, or Identity*

Count I is brought under Fla. Stat. § 540.08, which provides a statutory right of publicity. Doc. 1-3(A) ¶¶ 808-819.  Koren alleges that DaVinci's published her image without her consent. *Id.* ¶¶ 810, 812-813.  With respect to intent, she alleges that DaVinci's published the image "intentionally or, at a minimum, recklessly," it "had actual or constructive knowledge of the wrongfulness of its conduct and acted with intent or with reckless disregard to deprive Koren of a property interest," and, "at a minimum, [its] conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Koren's rights." *Id.* ¶¶ 814-816. "Alternatively, Defendant acted negligently towards Koren in using and disseminating, without authority, her image, likeness and/or identity[.]" *Id.* ¶ 817.

Count I alleges three alternative theories of liability for Defendant's conduct: intent, recklessness or conscious disregard, and negligence.  As in *Lime Tree*, *Public Risk Management*, and *SM Brickell*, Count I contains at least one theory that would fall outside of the policy exclusion for the knowing violation of another's rights. *Cf. Amica Mut.*, 2019 WL 1015203 at *7 (containing no alternative theories).  The exclusion does not apply to this count.

---

[6] The different Plaintiffs' allegations for each count are identical to each other's; they each allege the same five counts.  For this analysis the Court will cite to the allegations of Plaintiff Koren, whose injuries PESLIC concedes fall entirely within its policy period.

The exclusion for Material Published with Knowledge of Its Falsity also does not apply to the allegations of Count I.  PESLIC argues that all counts fall within this exclusion because they arise out of DaVinci's knowing use of the Plaintiffs' image to give the false impression that they agreed to promote or endorse DaVinci's. Doc. 27 at 19.  It is true that the complaint's general factual allegations, which are incorporated into each count, include the statement that "Defendant's conduct creates the false and misleading appearance and impression that each Plaintiff either works for DaVinci's Club" or has agreed to advertise for it. Doc. 1-3(A) ¶ 49.  But this statement does not allege DaVinci's *knowledge* of the falsity.  Nor do the allegations specific to Count I expressly refer to its knowledge of the falsity or can fairly be said to "arise out of" its knowledge of the falsity. *See id.* ¶ 818 (DaVinci's "attribute[ed] to Koren the adult entertainment and striptease lifestyle and activities at DaVinci's Club.").  And, as discussed *supra*, the allegations in Count I include an alternative theory of liability that does not include knowledge.   The second knowing exclusion also does not apply to Count I.

b. *Count II: Common Law Invasion of Privacy - Misappropriation*

In Count II, Koren alleges that DaVinci's violated her common law right to privacy, which prohibits the publication of her likeness without her express consent. Doc. 1-3(A) ¶¶ 820-825.  Count II contains identical allegations regarding *mens rea* to Count I, including allegations that support theories of intent, recklessness or conscious disregard, and negligence. *Id.* ¶¶ 826-829.  Accordingly, neither knowing exclusion applies.

c. *Count III: Conversion*

Koren next alleges that DaVinci's unlawfully converted her image for DaVinci's own commercial benefit, continuing to exercise ownership over it and refusing to return it or pay for the deprivation of her property. *Id.* ¶¶ 832-837. She alleges "that in engaging in the conduct described above, Defendant acted with oppression and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Koren's rights." *Id.* ¶ 839.

The allegation that DaVinci's acted with "conscious disregard" of Koren's rights does not establish that it knowingly violated them. "Conscious disregard" is a state of mind akin to recklessness, a different *mens rea* from knowledge. *See Reckless*, Black's Law Dictionary (11th ed. 2019) ("Characterized by the creation of a substantial and unjustifiable risk of harm to others and by a *conscious* (and sometimes deliberate) *disregard* for or indifference to that risk") (emphasis added); *Travelers Property Cas. Co. of Am. v. Kansas City Landsmen, LLC*, 592 Fed. App'x 876, 882 (11th Cir. 2015) ("'[K]nowing' violations are excluded from coverage, but violations committed with 'reckless disregard' are not), citing *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 71 (2007) (differentiating between knowing violations and those committed with reckless disregard); *see also Disregard: Reckless Disregard*, Black's Law Dictionary (11th ed. 2019) ("*conscious* indifference to the consequences of an act") (emphasis added).

Similarly, the use of the term "malice" does not necessarily allege a knowing violation of another's rights. Florida law allows for two types of malice: actual malice, which is intentional, or "legal malice," which "requires proof of an intentional act"

but "does not require proof of evil intent or motive." *See Olson v. Johnson*, 961 So.2d 356, 359 (Fla. 2d DCA 2007); *see also Malice*, Black's Law Dictionary (11th ed. 2019) (second definition is acting with "reckless disregard of the law or of a person's legal rights"). DaVinci's could have acted with legal malice without knowingly violating Koren's rights. Count III therefore does not fall exclusively within either knowing exclusion.

> ### d.  Count IV: Unjust Enrichment

In Count IV, Koren alleges that DaVinci's retained profits and other benefits that were conferred upon it inequitably through its use of Koren's image or likeness. *Id.* ¶¶ 840-844.  Defendant "was aware that Koren's image, likeness and/or identity were valuable[,]" and it "was aware of the resulting benefit from the usage of Koren's image, likeness and/or identity." *Id.* ¶¶ 842-843.  Although Koren alleges DaVinci's knowledge of some aspects of the count—that it was receiving a valuable benefit—she does not specifically allege DaVinci's awareness that the benefit came from its violation of Koren's rights.  In *Kansas City Landsmen*, the Eleventh Circuit differentiated between a complaint's allegations of the defendant's knowledge of a statute's requirements, versus alleging its knowledge of violations of those requirements. 592 Fed. App'x at 883.  Because the complaint lacked allegations that the defendant knowingly *violated* the requirements, it did not fall within the policy exclusion for knowing violations. *Id.*  Here, too, the Court concludes that the allegations of Count IV do not fall within the policy exclusion for knowing violations of an individual's rights because the allegations as to knowledge are not specific

enough.   Nor, as in Counts I, II, and III, do the allegations establish DaVinci's knowledge of a falsehood.   Count IV does not fall under either knowing policy exclusion.

   *e.  Count V: Defamation*

   Count V alleges that DaVinci's defamed Koren by publishing advertisements that falsely depicted her as a stripper employed by DaVinci's. Doc. 1-3(A) ¶¶ 846-861. Koren alleges that DaVinci's published the advertisements "falsely, willfully, and maliciously," in an "attempt by Defendant to falsify claim that Koren is a stripper employed by Defendant." *Id.* ¶¶ 846, 848.  Further, she alleges that "Defendant has acted with actual malice; that Defendant knew that Koren was not a stripper…and yet Defendant published the advertisements of Koren with knowledge of their falsity or acted with reckless disregard as to whether the advertisements were an accurate representation." *Id.* ¶ 850.  DaVinci's acted in a "grossly irresponsible manner with reckless disregard for the standards of truth and veracity ordinarily followed by responsible persons" and "knew that in making the statements, a false impression would be made, and Koren would be damaged." *Id.* ¶ 851.  Moreover, it "knew that the statements about Koren were false" and "knew that Koren never made the comments or engaged in the behavior that she was falsely depicting in Defendant's [advertisements]." *Id.* ¶¶ 854-855.  DaVinci's published the statements "despite having every reason to doubt [their] validity" and after taking "no action to verify" them. *Id.* ¶ 857.  Finally, it "knew or should has [sic] known that the failure to exercise due care in obtaining permission from Koren…would cause Koren severe emotional distress[,]"

it "knew that…it was likely that someone would recognize the advertisements and assume that Koren is a stripper[,]" and it "undertook this action with careless disregard of the fact that Koren would suffer emotional distress and humiliation as a result of Defendant's wanton and reckless disregard of the consequences to Koren." *Id.* ¶¶ 859-860.

The Count V allegations plainly allege DaVinci's knowledge of the falsity of the implications created by its advertisements. *See id.* ¶¶ 848, 850, 851, 854, 855. Some of the allegations also contain references to reckless or negligent conduct, including in failing to verify the statements' validity before publishing them. *See id.* ¶¶ 850, 851, 857. Unlike in Counts I and II, however, these allegations are not pleaded in the alternative, or even accompanied by "or" in all but one case. The one allegation that is the closest to pleading an alternative theory is paragraph 850, which alleges that DaVinci's published the advertisements "with knowledge of their falsity or…with reckless disregard" of their accuracy—but even this statement is preceded in the same paragraph by the unqualified allegations that DaVinci's "knew Koren was not a stripper" and that it "acted with actual malice," an intentional standard. This paragraph cannot be fairly read to plead an alternative theory in which DaVinci's did not know of the falsity. Further, the allegations of recklessness in paragraphs 859 and 860 ("knew or should ha[ve] known[,]" "careless disregard" and "wanton and reckless disregard") are made only as to the effect on Koren, rather than to the acts that violated her rights, and therefore do not save the count from falling within the knowing exclusions. *Cf. Kansas City Landsmen*, 592 Fed. App'x at 883.

The allegations in Count V affirmatively and repeatedly state that DaVinci's knew Koren was not a stripper.  Indeed, Koren alleges that Defendant published the advertisements in an "attempt" to create that very impression. Doc. 1-3(A) ¶ 848. These allegations are therefore distinct from *SM Brickell*, 786 So.2d 1204, and *Arch Specialty Ins. Co. v. Highlands at Hunter's Green Co. Assn.*, 8:19-cv-1971-SDM-SPF, 2020 WL 9439392, *2 (M.D. Fla. Nov. 4, 2020) (Merryday, J.), in which the underlying complaint fell outside the same policy exclusions because it alleged that the defendant knowingly, recklessly, or negligently published false statements, and did so "with a negligent or reckless disregard for [their] truth."  Here, the repeated allegations about DaVinci's knowledge place Count V solely within the purview of the policy exclusion of Material Published with Knowledge of Falsity. *See* Doc. 27-1 at 46.  The Court therefore need not determine whether it also falls within the exclusion for Knowing Violation of Rights of Another.  The defamation counts do not trigger PESLIC's duty to defend.

### 4) *Intellectual Property (IP) Exclusion*

Lastly, both PESLIC and Swiss Re argue that an intellectual property exclusion bars coverage of all of Plaintiffs' claims.  In both policies, the exclusion reads:

> **Infringement of Copyright, Patent, Trademark or Trade Secret**
> 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

Doc. 27-1 at 47; Doc. 33-1 at 33.  The Swiss Re policy goes on to clarify:

> Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement.'
>
> However, this exclusion does not apply to infringement, in your 'advertisement,' of copyright, trade dress or slogan.

Doc. 33-1 at 33.  The advertisement exceptions were deleted from the PESLIC policy in an endorsement. *See* Doc. 27-1 at 35, 47.

Both Defendants argue that all of the Plaintiffs' claims arise from the alleged infringement of their intellectual property rights, which include their right to publicity. Doc. 50 at 16-25; Doc. 27 at 20-21.  Therefore, the Defendants assert that coverage for the claims is barred by the IP exclusion. *Id.*

In response to both Defendants, Plaintiffs argue that their allegations are broader than just infringement of intellectual property, highlighting the counts alleging defamation and torts involving the right of privacy. Doc. 35 at 18-19; Doc. 51 at 14-17.  In the alternative, if the IP exclusion is interpreted so broadly as to encompass all of their claims, it is unenforceable or ambiguous because it renders the policy's advertising coverage illusory. *Id.* at 17-19; Doc. 35 at 19-20.

With respect to the advertisement exceptions listed in the Swiss Re policy, Plaintiffs argue that the exception for the "use of another's advertising idea" applies, because the term "advertising idea" is broad enough to encompass their allegations. Doc. 51 at 21.  With respect to the PESLIC policy, Plaintiffs argue that the deletion of the advertisement exceptions is unclear, and therefore ambiguous, or that it renders the advertising injury coverage illusory. Doc. 35 at 18.

*a. Arising Out of the Infringement of Intellectual Property Rights*

The Court will first address whether each of the Plaintiffs' claims arises out of the infringement of intellectual property rights, without considering the advertisement exceptions.

As the Eleventh Circuit has summarized,

> The term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.' To have arisen out of something, there must be some causal connection, or relationship that is more than a mere coincidence, but proximate cause is not required. The phrase 'arising out of' contemplates a more attenuated link than the phrase 'because of.'

*Land's End at Sunset Beach Cmty. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 745 Fed. App'x 314, 319 (11th Cir. 2018), quoting *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So.2d 528, 539 (Fla. 2005) and *Garcia v. Fed. Ins. Co.*, 969 So.2d 288, 293 (Fla. 2007). In *Taurus Holdings*, for example, the Florida Supreme Court found that a policy exclusion for "all bodily injury and property damage…arising out of your product" excluded coverage of a suit whose complaint alleged damages of increased health care and emergency services costs due to gun violence, because those allegations arose out of—they were not merely incidentally related to—the use of the insured's firearms products. 913 So.2d at 540.

Count I alleges that DaVinci's published Plaintiffs' image without their consent in violation of Fla. Stat. § 540.08. *See* Doc. 1-3(A) ¶¶ 808-810. Section 540.08 "is a quintessential right of publicity claim, and the right of publicity is a widely recognized

intellectual property right." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1323 (11th Cir. 2006) (collecting cases).  Accordingly, the Count I claims arise out of the infringement of Plaintiff's intellectual property rights, thereby falling under the IP exclusion.

Count II, although brought under the "common law right to privacy," similarly alleges that DaVinci's violated that right by publishing the Plaintiffs' image without their consent. *See* Doc. 1-3(A) ¶¶ 808-819.  The allegations of Count II are identical to those of Count I but for the reference to common law and the omission of Fla. Stat. § 540.08.  Indeed, the *Almeida* court recognized that § 540.08 "permits a party to proceed under available common law invasion of privacy theories." 456 F.3d at 1320 n.1.  As one court in this District observed in a case involving the same allegations as here, "[t]he common law protection against misappropriation of likeness is substantially the same as the statutory right of publicity in Fla. Stat. § 540.08." *Burciaga v. Gold Club Tampa, Inc.*, 8:16-cv-790-JDW-JSS, 2016 WL 9526567, *4 (M.D. Fla. Dec. 28, 2016) (Whittemore, J.).  Therefore, the Count II claims also fall under the IP exclusion.

Count III alleges conversion of the Plaintiffs' property rights to their image for DaVinci's commercial benefit. *See* Doc. 1-3(A) ¶¶ 832-839.  Count IV alleges that DaVinci's was unjustly enriched by its use of the Plaintiffs' image without compensation. *See id.* ¶¶ 840-845.  Neither of these claims directly alleges intellectual property infringement in the same manner as Counts I and II.   However, the Court concludes that both claims arise out of DaVinci's alleged infringement of Plaintiffs' right to publicity—its use of their image without consent or compensation.

In *Land's End*, the Eleventh Circuit found that counterclaims alleging false designation of origin and unfair competition fell within an intellectual property exclusion because they arose out of the plaintiff's alleged infringement of a trademark. 745 Fed. App'x at 319.   Although each counterclaim required elements of proof beyond trademark use, they each depended on the plaintiff's use of the trademark: the alleged reason the plaintiff's activities constituted false designation of origin and unfair competition was the use of the mark in the plaintiff's marketing. *Id.*; *see Power Corp. v. Amerisure Ins. Co.*, 2:12-cv-192-JES-DNF, 2013 WL 4523490, *5-6 (M.D. Fla. Aug. 26, 2013) (IP exclusion applied to false advertising claim that was "grounded on the alleged improper use of a trademark"); *see also Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, 515 F.Supp.3d 1292, 1303-1303 (S.D. Fla. 2021) (conversion claim was preempted by federal copyright law because its "gravamen…is that Celebrity continue[d] to use and exploit Plaintiff's intellectual property by displaying it on Celebrity's website, using it in various marketing venues, and inviting media to download it" (quotations and modifications omitted); unjust enrichment claims were also preempted because they were "not qualitatively different from a copyright infringement claim").

Here, too, the Court concludes that Plaintiffs' conversion and unjust enrichment claims arise out of intellectual property infringement.   Although they each include additional elements, their gravamen is based on, and depends on, DaVinci's alleged infringement of their right to publicity through its use of their image.   Plaintiffs' attempt to distinguish *Land's End* and *Power Corp.* on the ground that they both

involved trademark infringement (Doc. 51 at 19) is unavailing, as the IP exclusion lists infringement of trademark "or other intellectual property rights"—such as the right to publicity.

Moreover, the Court disagrees with the holding of *AIX Specialty Ins. Co. v. Dginguerian*, 18-24099-CIV, 2019 WL 4573255, *6-7 (S.D. Fla. Sept. 20, 2019), on which Plaintiffs rely heavily. *See* Doc. 51 at 15-16. The allegations of *Dginguerian* are nearly identical to the underlying complaint here. Although the underlying complaint in *Dginguerian* lacked an explicit count of defamation, the court found that all of the plaintiffs' assertions "sound[ed] in defamation" and adequately alleged its elements. 2019 WL 4573255 at *6. It therefore found that the complaint contained grounds for liability that fell outside of the IP exclusion, triggering the duty to defend. *Id.* at *7. As Swiss Re points out (Doc. 50 at 23), however, the *Dginguerian* court did not analyze or discuss the provision of the IP exclusion that an injury need only "arise out of" intellectual property infringement. Thus, the Court finds that the allegations in Counts I through IV plainly "arise out of" the infringement of Plaintiffs' right to publicity through the publication of their image. Accordingly, they fall under the IP exclusion.

Lastly, Count V, defamation, alleges that DaVinci's publication of the Plaintiffs' image falsely and knowingly implied that Plaintiffs were employed by DaVinci's as strippers. *See* Doc. 1-3(A) ¶¶ 846-861.[7] Plaintiffs argue that this count is separate and

---

[7] Because the Court has concluded that the PESLIC policy does not cover any Count V claims based on the knowledge of falsity exclusion, it analyzes Count V only with respect to the Swiss Re policy. *See Travelers Indemn. Co. of Conn. v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1261 n.4 (11th Cir. 2021) (after finding that some claims fell within one policy

distinct from the elements of the other claims, Doc. 51 at 15-16, and it is true that it is removed from the right of publicity in a way that the unjust enrichment and conversion claims are not.   On the other hand, the defamation would not have occurred if DaVinci's had not published Plaintiffs' images without their consent—rendering the infringement of their intellectual property rights a "but for" cause of the defamation. While proximate cause is not required, the fact that the defamation indisputably "originat[ed] from" and is causally connected to—not merely incidentally related to— the infringement of the right to publicity is sufficient to establish that it arises out of it. *See Taurus Holdings*, 913 So.2d at 539, 540.   Because Count V arises out of the infringement of Plaintiffs' intellectual property rights, it falls under the IP exclusion.

   b.   *Illusory Coverage*

   Plaintiffs argue, in the alternative, that the IP exclusion is not enforceable because it renders the coverage for advertising injuries illusory. Doc. 35 at 18-20; Doc. 51 at 17-19.   Florida law recognizes two ways in which a term in an insurance policy can be illusory. *Am. Cas. Co. of Reading, Penn. v. Belcher*, 709 Fed. App'x 606, 610 (11th Cir. 2017).   First, if a policy exclusion or limitation "swallow[s] up" an insuring provision, Florida courts have held that it is ambiguous; because ambiguous provisions must be interpreted in favor of the insured, the exclusion or limitation is ignored. *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1352 (11th Cir.

---

exclusion, analyzing whether the remaining claim fell under a different exclusion in order to determine whether a duty to defend arose).

2017).  In the second type, found in common law, an exclusion is illusory when it "eliminates all—or at least virtually all—coverage in a policy." *Id.*

The first type of illusory coverage focuses on whether an individual policy provision is directly contradicted by another provision.  "An insurance policy cannot grant rights in one paragraph and then retract the very same right in another paragraph called an 'exclusion.'" *Tire Kingdom, Inc. v. First S. Ins. Co.*, 573 So.2d 885, 887 (Fla. 3d DCA 1990).  When a coverage provision and an exclusion are "directly at odds," they leave the insured "to wonder which provision correctly explain[s] the scope of his coverage." *Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc.*, 10 F.4th 1255, 1265 (11th Cir. 2021).  For example, if "the category of coverage is smaller than the category of exclusion," so that it is "impossible to do the covered activity without also doing the excluded activity," the exclusion will be found to be ambiguous or render the coverage illusory. *Id.* at 1266.  In *Purrelli v. State Farm Fire & Cas. Co.*, 698 So.2d 618 (Fla. 2d DCA 1997), the court rejected a policy that purported to provide coverage for "specified intentional torts" but also excluded coverage for "intended acts." *See also Tire Kingdom*, 573 So.2d at 887 (rejecting exclusion where the policy provided coverage for certain advertising activities and then excluded those same activities; noting that "[i]nconsistent language in a liability policy requires the adopting of the construction that will afford the most coverage").

On the other hand, a provision or policy will not be considered illusory merely because an exclusion eliminates *most* coverage—"even if [it] make[s] the coverage depend on extraordinary circumstances that are unlikely to occur." *Richard McKenzie*,

10 F.4th at 1266.  The courts have differentiated between "complete contradiction or complete negation and merely excepting some or many or even most things from coverage." *Id.*  In *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 967 (11th Cir. 2014), an exclusion did not render coverage illusory even though it broadly excluded personal and advertising injury coverage for any violations of a statute, ordinance, or regulation related to the sending, transmitting, or communicating of any material or information.  Although the exclusion significantly reduced coverage, the court found that the policy still contained extensive coverage, including for violations of common law and for other types of liability besides personal and advertising injury. *Id.*  Similarly, the *Zucker* court upheld a prior acts exclusion that provided coverage only for claims that arose exclusively from conduct that happened after the policy's effective date—finding that the exclusion "excludes a lot of coverage, but not all coverage." 856 F.3d at 1353; *see also Berkley Assurance Co. v. Expert Group Int'l Inc.*, 779 Fed. App'x 604, 612 (11th Cir. 2019) (rejecting argument of insured, an au pair agency, that a prior knowledge exclusion precluded coverage as to any possible claim brought by an au pair; observing that the fact that an exclusion applied in the plaintiff's case did not mean it applied in *any* case); *Am. Cas. Co. of Reading*, 709 Fed. App'x at 610 (exclusion was not illusory because there were situations in which the policy and provision at issue would still provide coverage).

Plaintiffs argue that the IP exclusion renders the policy's coverage of advertising injury illusory because it essentially eliminates any coverage, just as the court found in *Princeton Express v. DM Ventures USA LLC*, 229 F.Supp.3d 1252 (S.D. Fla. 2016) and

*Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Houston, Inc.*, No. 4:20-CV-03680, 2022 WL 3356529, *8 (S.D. Tex. Aug. 12, 2022). Both cases involved the same or a similar PESLIC policy and factual allegations. In both, the policy defined an "advertising injury" as:

> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement"; or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

229 F.Supp.3d at 1257. In *DM Ventures*, the policy contained the following endorsement:

> **Exclusion- Field of Entertainment**
> This insurance does not apply to any loss, claim, 'suit,' cost, expense or liability for damages, directly or indirectly based on, attributable to, arising out of, involving, resulting from or in any way related to:
>
> a. Actual or alleged activity which is claimed to be an intellectual property infringement or violation of any of the following rights or laws: copyright, patent, trade dress, trade secrets, trade name, trademark or service mark;
>
> b. Actual or alleged invasion of privacy;
>
> c. Actual or alleged libel, slander, or any form of defamation;
>
> d. Actual or alleged unauthorized use of titles, slogans, names, formats, ideas, characters, artwork, theme, plots or other material;

> e. Actual or alleged infringement of copyright or common law
> rights in literary, artistic or musical material, or actual or alleged
> infringement of literary, artistic or musical rights codes[.]

*Id.* The insured argued that the Field of Entertainment exclusion, which would indisputably preclude coverage for the underlying claims, was ambiguous and illusory because it deleted the very coverage it purported to provide, thereby falling directly under *Purrelli. Id.* at 1257-58. The court agreed, observing that the exclusion "essentially eliminates all advertising injury coverage" even though the policy provided that it covered advertising injury. *Id.* at 1260. As a result, the Field of Entertainment exclusion was unenforceable. *Id.*

The policy in *A.H.D. Houston*[8] contained a different exclusion:

> **Libel, Slander, Disparagement and Privacy Exclusion**
> This insurance does not apply to: Personal and Advertising Injury
> Parts d, e, f and g Arising Out of Exhibits and Related Marketing.
>
> 'Exhibitions and related marketing' means:
>
> (a) The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and web sites.

---

[8] There were two policies at issue in *A.H.D. Houston*. The first, called the "'01 Policy," contained an identical Field of Entertainment exclusion to *DM Ventures* except that it also contained an exception for "advertising ideas," under which the court concluded the plaintiffs' claims fell. 2022 WL 3356529 at *5-6. In this section, this Court will discuss only the second policy in *A.H.D. Houston*, called the "'02 Policy."

(b) The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.

(c) Merchandising, advertising or publicity programs or materials for the operations and materials described in (a) or (b) above.

2022 WL 3356529 at *3.  Just as in *DM Ventures*, the court found that the definition of "exhibitions and related marketing" was so far reaching that it swallowed up every type of advertising injury that PESLIC purported to cover. *Id.* at *9.  Because it could not come up with any factual scenario in which the policy would provide advertising injury coverage, the court—interpreting Texas law, which it noted was similar to Florida law—declined to give effect to the exclusion. *Id.*

Here, the provisions of the PESLIC and Swiss Re policies that relate to Plaintiffs' argument regarding illusory coverage are meaningfully different from each other.  The Court will therefore analyze them separately.

(i)  The PESLIC Policy

The PESLIC policy contains the same definitions of "advertising injury" as the policy in *DM Ventures*.  *See* Doc. 27-1 at 55.[9]  However, it also contains the following endorsement:

---

[9] In the PESLIC policy, the Swiss Re policy, and the policy in *DM Ventures*, these definitions are contained in an identical section entitled "Personal and Advertising Injury," which is defined as an:

[I]njury, including consequential 'bodily injury', arising out of one or more of the following offenses:

(a) False arrest, detention or imprisonment;
(b) Malicious prosecution;

**Coverage Restriction – Advertising Activities**

*This endorsement modifies insurance provided under the following:*
COMMERCIAL GENERAL LIABILITY COVERAGE PART
With respect to **Coverage B – Personal and Advertising Injury Liability, Paragraphs 14.d, e., f.** and **g.** of the **Definitions** section do not apply.

*Id.* at 37. The endorsement's effect is to eliminate all advertising injury coverage from the policy, leaving only coverage for liability arising from select types of personal injury. Yet, inexplicably, neither PESLIC nor Plaintiffs refer to it in their arguments. PESLIC does not argue that it is entitled to dismissal because the endorsement eliminates the policy's advertising injury coverage. Likewise, Plaintiffs do not argue that the endorsement is unenforceable because it renders the purported advertising injury coverage illusory. Plaintiffs argue only that the IP exclusion is illusory because it conflicts with the definitions of an advertising injury—failing to acknowledge that those definitions were, ostensibly, deleted.

---

      (c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
      (d) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
      (e) Oral or written publication, in any manner, of material that violates a person's right of privacy;
      (f) The use of another's advertising idea in your 'advertisement'; or
      (g) Infringing upon another's copyright, trade dress or slogan in your 'advertisement'.

Doc. 27-1 at 55; Doc. 33-1 at 41.

On this record, and at this stage of the case, the Court cannot determine whether the endorsement purporting to eliminate all advertising injury coverage is enforceable or illusory. *Compare, e.g.*, *Hooters of Augusta, Inc. v. American Global Ins. Co.*, 157 Fed. App'x 201, 209 (11th Cir. 2005) (holding that "[w]hen an endorsement is entered at the same moment as the policy it accompanies, rather than at a later time, *and* the endorsement purports to obliterate coverage, as opposed to merely clarifying, narrowing, or modifying the terms of coverage, we believe the approach more consistent with Georgia law is to read the endorsement and the terms of the policy as being coequal and thus to enforce the provision that grants coverage," because of Georgia's—like Florida's—rules of insurance contract interpretation that favor the insured in the event of ambiguity) *with Zucker*, 856 F.3d at 1353 (enforcing an exclusion that the insured, "a sophisticated, fully informed party," bargained for, having received a discount for a policy that offered less coverage); *see Interline Brands*, 749 F.3d at 967 ("Exclusions…allow creation of a policy that provides the insured the coverage it needs at a price it can afford.").  For the purpose of the instant motion to dismiss, the Court will disregard the endorsement.

Assuming the "advertising injury" definitions were not deleted, then, the Court will consider whether the IP exclusion renders them illusory.[10]  To do so, it must determine whether there is any conduct listed in 14(d) through (g) that would be

---

[10] PESLIC does not offer any substantive response on this topic, instead arguing that coverage is not illusory because the IP exclusion in its policy is different from the exclusions at issue in the cases Plaintiffs cite. Doc. 45 at 5.  The Court finds this argument unpersuasive.

covered after application of the exclusion, or whether the IP exclusion completely contradicts that list. *See Richard McKenzie*, 10 F.4th at 2065-66.  If there is any conduct that does not arise out of infringement of intellectual property rights, however unlikely to occur, then the advertising injury coverage is not illusory and the exclusion is enforceable. *Id.* at 1066.  The Court finds that such conduct exists.  For example, a defamation claim in which a politician alleges he was falsely accused of stealing taxpayer funds cannot be said to "arise out of" the infringement of any intellectual property rights, and it would fall squarely within definition (d) (the publication of material that slanders or libels a person).  Although the Court has held that *Plaintiffs'* defamation claim arises out of the infringement of intellectual property rights, much of the possible conduct that would fall under definition (d) does not. *See Berkley*, 779 Fed. App'x at 612 ("The mere fact that the exclusion applies in this specific case…does not mean it applies in any case[.]").  This action is therefore unlike *DM Ventures* or *A.H.D. Houston*, because the IP exclusion does not eliminate all advertising injury coverage.

On the other hand, the IP exclusion does completely eliminate the coverage in definition (g) ("infringing upon another's copyright, trade dress or slogan in your 'advertisement'"), which necessarily arises from infringement of intellectual property rights, and likely from definition (f) ("the use of another's advertising idea in your 'advertisement'") as well.  Moreover, a separate endorsement deleted the advertisement exceptions to the IP exclusion that salvaged coverage under (f) and (g). Doc. 27-1 at 35, 47.  Thus, the combined provisions effectively "grant a right in one

paragraph and then retract the very same right in a later one"—which Florida courts have found is ambiguous, illusory, and, as a result, unenforceable. *See Zucker*, 856 F.3d at 1352, quoting *Tire Kingdom*, 573 So.2d at 887; *see also Zucker*, 856 F.3d at 1352 ("In that way the policy's exclusion expressly contradicted its coverage provisions, leaving the insured to wonder which provision correctly explained the scope of his coverage."), citing *Purrelli*, 698 So.2d at 620.   On this record, the Court cannot rule out the possibility that the PESLIC policy's endorsement deleting the advertisement exceptions to the IP exclusion is unenforceable.   It will therefore give no effect to the endorsement, and read the policy with a complete IP exclusion. *See White Springs Agr. Chemicals, Inc. v. Gaffin Indus. Svcs., Inc.*, 3:11-cv-998-TJC-JK, 2015 WL 10388375, *6 (M.D. Fla. March 10, 2015) (eliminating only the contradictory policy phrase that created ambiguity, rather than the entire provision).   Whether the advertisement exceptions to the IP exclusion lend coverage to the Plaintiffs' claims under the PESLIC policy will be addressed in Section (c), *infra*.

(ii)   The Swiss Re Policy

The Swiss Re policy is identical in all relevant respects to the PESLIC policy, except that it contains neither of the endorsements at issue in the PESLIC policy. Neither the advertising injury definitions nor the advertisement exceptions have been deleted from the Swiss Re policy.  Accordingly, for the same reasons discussed in the previous section, the Court finds that the complete IP exclusion does not render coverage of advertising injuries illusory.

*c. Advertisement Exceptions to IP Exclusion*

Finally, the Court turns to the question of whether any of Plaintiffs' claims fall under the advertisement exceptions to the IP exclusion,[11] such that coverage is not excluded.  Plaintiffs argue that the allegations in the underlying complaint support a theory of coverage based on "the use of another's advertising idea in your 'advertisement.'" Doc. 35 at 18; Doc. 51 at 20.   Neither PESLIC nor Swiss Re responds to this argument.

The policies define an advertisement as follows:

> 'Advertisement' means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:
>
> a. Notices that are published include material placed on the internet or on similar electronic means of communication; and
>
> b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

---

[11] The complete IP exclusion reads:

> **Infringement of Copyright, Patent, Trademark or Trade Secret**
> 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.   Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement.'
> However, this exclusion does not apply to infringement, in your 'advertisement,' of copyright, trade dress or slogan.

Doc. 27-1 at 47; Doc. 33-1 at 33.

Doc. 27-1 at 53; Doc. 33-1 at 39.   Based on this definition, Plaintiffs' allegations unquestionably establish that DaVinci's' publications of their images, which allegedly caused them injury, occurred in an "advertisement." *See Hyman v. Nationwide Mut. Ins. Co.*, 304 F.3d 1179, 1186-87 (11th Cir. 2002) (insured must prove "there exists a causal connection between the advertising injury and the advertising activity undertaken by" the insured).

Less clear is Plaintiffs' assertion that DaVinci's use of their images constituted the use of their advertising idea.  The policy does not define an "advertising idea," but the Eleventh Circuit has construed the term to mean "any idea or concept related to the promotion of a product to the public," or "a concept about the manner a product is promoted to the public." *Trailer Bridge, Inc. v. Ill. Nat. Ins. Co.*, 657 F.3d 1135, 1143 (11th Cir. 2011) (citations omitted).  For example, the *Trailer Bridge* court expressed doubt that a statement in a news article qualified as an advertising idea because "its purpose does not appear related to promoting Trailer Bridge's product." *Id.* at 1144; *see also id.* at 1143, quoting *American Simmental Ass'n v. Coregis Ins. Co.*, 282 F.3d 582, 587 (8th Cir. 2002) ("The plain and ordinary meaning of 'advertising idea' generally encompasses an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage.").   A product's trade dress—its "total image"—may qualify as an advertising idea. *Hyman*, 304 F.3d at 1189; *see also State Auto Property and Casualty Ins. Co. v. Travelers Indemnity Co. of Am.*, 343 F.3d 249, 258 (4th Cir. 2003) (a trademark functioning to advertise a company's products is an advertising idea).   But trade secrets relating to the manufacture of a

product line likely do not. *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 748 (3d Cir. 1999); *see also State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1234 (11th Cir. 2004) (a confidential customer list is not an advertising idea).

Here, Plaintiffs' images *are* their product. *See*, *e.g.*, Doc. 1-3(A) ¶¶ 39, 834, 842 (Plaintiffs earn a living by promoting their image and likeness, which is valuable and in which they have a property interest). But it is possible that their images are also a concept related to the promotion of their product. After all, Plaintiffs allege that they establish their "brand" by the choices they make as to which companies they permit to display their image. *Id.* ¶¶ 40, 42, 43, 45, 47-48. The court in *A.H.D. Houston*, 2022 WL 3356529 at *6, considering comparable allegations, found the Plaintiffs had adequately alleged that a club used their advertising ideas through its use of their images. This Court has not discovered any decisions to the contrary. At this stage, then, and without any opposition briefing from the Defendants on this topic, the Court cannot conclude there is no possibility of coverage under the advertising ideas exception to the IP exclusion. Neither PESLIC nor Swiss Re has met its burden of proving that the complete IP exclusion excludes coverage for the Plaintiffs' claims, and the policy and pleadings do not "unambiguously reveal" that there is no coverage. *See Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 143 F.Supp.3d 1283, 1291, 1293 (S.D. Fla. 2015). Accordingly, both motions are due to be denied.

## V.    CONCLUSION

Plaintiffs have failed to establish that there is no subject matter jurisdiction in federal court.   Moreover, the Defendants have also failed to meet their burden of proving that the Plaintiffs' claims are due to be dismissed on procedural or substantive grounds.   Therefore, all four pending motions must be denied.

Accordingly, it is **ORDERED**:

1.  Plaintiffs Lina Posada *et al.*'s Motion to Remand to State Court (Doc. 37) is **DENIED**.

2.  Defendant Aspen Specialty Insurance Company's Motion to Dismiss (Doc. 24) is **DENIED**.

3.  Defendant Princeton Excess and Surplus Lines Insurance Company's Motion to Dismiss (Doc. 27) is **DENIED**.

4.  Defendant First Specialty Insurance Corporation's Motion for Judgment on the Pleadings (Doc. 50) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on March 30, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties